UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES, | ) | |
| | ) | |
| Plaintiff, | ) | 11 CR 625-1 |
| | ) | |
| vs. | ) | Judge Feinerman |
| | ) | |
| RAFI SAYYED, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Rafi Sayyed pleaded guilty to committing mail fraud in violation of 18 U.S.C. § 1341. Docs. 77-78. He was sentenced to three months' imprisonment and ordered to make restitution in the amount of $940,450.00. Doc. 96. The Government, seeking to enforce the restitution judgment, has moved for the liquidation and turnover of two of Sayyed's retirement accounts. Doc. 163. The motion is granted.

**Discussion**

Because the parties do not dispute any relevant facts, the court draws background facts from the briefs, the plea agreement, and the presentence report.

Sayyed used his position as the director of application development for the American Hospital Association ("AHA") to steer overpriced contracts to consultants in exchange for kickbacks. Doc. 78 at 3-4. The Government charged Sayyed with five counts of mail fraud under 18 U.S.C. § 1341; he pleaded guilty to one count; and he was sentenced to three months' imprisonment. Docs. 4, 77-78, 96. The court also ordered Sayyed to make mandatory restitution to the AHA under 18 U.S.C. § 3663A in the amount of $940,450.00. Doc. 96 at 5. Sayyed owed $650,234.25 as of November 20, 2015. Doc. 163 at ¶ 1; Doc. 168 at ¶ 2.

1

Sayyed owns two retirement accounts that were worth $325,699.15 as of June 15, 2015: an IRA maintained by The Vanguard Group containing $64,910.21 in cash and securities; and a "401(k)-type account" maintained by Aetna containing $262,788.94 in cash and securities. Doc. 163 at ¶ 3. Although Sayyed is 48 years old and still employed, Doc. 94 at 4, both accounts allow him withdraw their full value now. Doc. 169 at 4; Doc. 177. After serving Vanguard and Aetna with citations to discover assets, the Government moved the court to order Sayyed to liquidate the accounts and turn over the proceeds in service of the restitution judgment. Doc. 163 at ¶ 3.

The Mandatory Victims Restitution Act of 1996 ("MVRA") authorizes the United States to enforce restitution awards "in accordance with the practices and procedures for the enforcement of a civil judgment under Federal law or State law." 18 U.S.C. § 3613(a). The MVRA provides, however, that the Government may not enforce an award in a way that violates "section 303 of the Consumer Credit Protection Act (15 U.S.C. 1673)," 18 U.S.C. § 3613(a)(3), which provides in turn that "the maximum part of the aggregate disposable earnings of an individual for any workweek which is subjected to garnishment may not exceed … 25 per centum of his disposable earnings for that week …." 15 U.S.C. § 1673(a)(2). The Consumer Credit Protection Act ("CCPA") defines "earnings" as "compensation paid or payable for personal services, whether denominated as wages, salary, commission, bonus, or otherwise" and, of particular relevance here, specifies that the term "includes periodic payments pursuant to a pension or retirement program." 15 U.S.C. § 1672(a).

The Government argues convincingly that lump sum withdrawals from Sayyed's two retirement accounts are not "earnings" under the CCPA. Although the value in the accounts can be traced to "compensation paid … for personal services," *ibid.*, not "every asset that is traceable

2

in some way to … compensation" qualifies as "earnings." *Kokoszka v. Belford*, 417 U.S. 642, 651 (1974) (holding that an income tax refund check did not qualify as "earnings" under the CCPA and therefore was not subject to the 25 percent garnishment cap); *see also Usery v. First Nat'l Bank of Ariz.*, 586 F.2d 107, 110-11 (9th Cir. 1978) (Kennedy, J.) (holding that wages lose their status as "earnings" when deposited in a savings account). And by specifying that "earnings" include "*periodic* payments pursuant to a pension or retirement program" (emphasis added), § 1672(a) strongly implies that *non*-periodic, lump sum payments from retirement programs are *not* "earnings." *See United States v. Fussell*, 567 F. App'x 869, 871-72 (11th Cir. 2014) (per curiam) (holding that the CCPA's cap does not apply to lump sum garnishments of retirement accounts); *United States v. Carpenter*, 2015 WL 4757573, at *2 (W.D. Mo. Aug. 12, 2015) (same); *United States v. McKnight*, 2012 WL 5336165, at *2 (W.D. Tex. Oct. 26, 2012) (same); *see also Kokoszka*, 417 U.S. at 651 (noting that "earnings" are "limited to periodic payments of compensation") (internal quotation marks omitted).

Sayyed retorts that under *United States v. Lee*, 659 F.3d 619 (7th Cir. 2011), his retirement accounts should be deemed "earnings" subject to the CCPA's 25 percent garnishment cap. But *Lee* holds only that the CCPA prevents the Government from garnishing more than 25 percent of *annual* periodic payments from a defendant's retirement accounts; its holding does not extend to cases where, as here, the Government seeks a lump-sum payment of funds *contained in* a retirement accounts rather than funds *paid out from* a retirement account in annual installments. Doc. 163 at 3. In fact, as the Seventh Circuit was careful to note, the defendant and the Government in *Lee* "agree[d] that 'any lump sum distribution [that Lee] may receive from the plans [would be] subject to turnover,'" *Lee*, 659 F.3d at 621, and the court's holding as to the annual payments relied on the fact that the CCPA by its terms "plainly subjects *periodic*

3

payments to the 25% limitation," *ibid*. (emphasis added); *see also id*. at 622 ("The statutory language refers to periodic payments, which describe the $2,000 and $3,000 annual payments from Lee's 401(k) and defined benefit pension plan.").

Although neither the United States nor Sayyed has been able to turn up the details of the retirement plans at issue in *Lee*, Sayyed contended at a hearing that those plans allowed lump sum distributions. But that seems unlikely. Why would the defendant in *Lee* have conceded that lump sum distributions are "subject to turnover" if his retirement plans allowed lump sum distributions? And why would the Government have targeted the plans' annual periodic payments when it could have obtained the whole amount right away (while avoiding the CCPA's language about "periodic payments")?

In any event, it does not matter whether the retirement plans in *Lee* actually allowed lump sum distributions. The Government tried to garnish only the plans' annual distributions, and the Seventh Circuit addressed only whether *that* particular garnishment was subject to the CCPA's cap. The (alleged) fact that *Lee* could have decided the lump-sum garnishment issue presented in this case, if the *Lee* parties had actually litigated it, does not justify extending *Lee*'s holding to that issue. *See Webster v. Fall*, 266 U.S. 507, 511 (1925) ("Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents."); *United States v. Richardson*, 558 F.3d 680, 681 (7th Cir. 2009) ("[T]he absence of any discussion [in a prior case] means that there is no holding on the point that might bind us in this case."); *Matter of Volpert*, 110 F.3d 494, 497 (7th Cir. 1997) (reasoning that because earlier opinions "did not discuss" whether a statute applies to bankruptcy courts, those opinions did not settle the question).

Sayyed maintains that the CCPA must protect retirement accounts from lump sum seizures, because otherwise its protections against garnishment of periodic payments from retirement accounts would be worthless. But that argument rests on the false premise that the CCPA is the only thing stopping the Government from making lump sum seizures of retirement accounts. The MVRA gives the Government only those rights to assets that the defendant has; if the defendant cannot withdraw the value of a retirement account as a lump sum, then the Government cannot either. *See United States v. Novak*, 476 F.3d 1041, 1063 (9th Cir. 2007) (en banc) (noting that, "because the government's right is to step into the *defendant's* shoes, it will not be able unilaterally to cash out a retirement plan when ERISA requires that lump sum payments be made payable only with spousal consent"). And many retirement accounts—very likely the accounts at issue in *Lee*, for instance—do not allow their beneficiaries to make lump sum withdrawals. *See ibid*. The CCPA protects those particular accounts even though it does not protect lump sum distributions as a general rule.

Sayyed also contends that the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq*., protects his retirement accounts from seizure. Doc. 168 at ¶ 9. Section 206(d)(1) of ERISA, 29 U.S.C. § 1056(d)(1), prohibits certain retirement plans from being "assigned or alienated," which means that those plans' assets typically cannot be seized to satisfy judgments. *See Guidry v. Sheet Metal Workers Nat'l Pension Fund*, 493 U.S. 365, 371-72 (1990); *cf. N.L.R.B. v. HH3 Trucking, Inc.*, 755 F.3d 468, 470 (7th Cir. 2014) (holding that the *proceeds* of a pension plan could be garnished after they had been paid out to the beneficiaries). But the MVRA supersedes ERISA's anti-alienation provision. It provides that a restitution judgment may be enforced against all of the defendant's property "[n]otwithstanding any other Federal law," 18 U.S.C. § 3613(a), and while it lists exceptions—including the CCPA's 25

5

percent cap on the garnishment of disposable earnings—ERISA's anti-alienation provision is not among them. ERISA thus is no obstacle to the requested turnover order. *See Novak*, 476 F.3d at 1046-47 (holding that the MVRA overrides ERISA's anti-alienation provision); *cf. United States v. Hosking*, 567 F.3d 329, 334-35 (7th Cir. 2009) (citing *Novak* to support holding that the MVRA authorized the Government to garnish an IRA notwithstanding an anti-alienation provision in the Tax Code that typically governs IRAs).

Sayyed also appears to argue in his briefs that allowing the Government to seize his retirement accounts would cause him and his family undue hardship. Doc. 168 at ¶¶ 9-10. Some federal courts have held that 28 U.S.C. § 3013 authorizes district courts to shield defendants from efforts to collect restitution judgments if the collection would cause "unreasonable annoyance, expense, embarrassment, disadvantage or other prejudice." *United States v. Lawrence*, 538 F. Supp. 2d 1188, 1195 (D.S.D. 2008); *see also United States v. King*, 2012 WL 1080297, at *6 (E.D. Pa. Apr. 2, 2012); *United States v. Kaye*, 93 F. Supp. 2d 196, 198-99 (D. Conn. 2000). But Sayyed clarified at the motion hearing that he was not seeking a hardship exemption, Doc. 179, and the court would not have granted one anyway. Sayyed still works, and for a substantial salary. Doc. 94 at 18; Doc. 177 at ¶ 6. While there is no doubt that Sayyed will experience the loss of his retirement savings as a burden, the circumstances are not grave enough to justify delaying restitution to his victims. *See King*, 2012 WL 1080297, at *6 (refusing to exempt a 66-year-old defendant's retirement accounts from garnishment on hardship grounds).

## Conclusion

For the foregoing reasons, the Government's motion for turnover is granted. The Government is entitled to the liquidation and turnover of Sayyed's Vanguard and Aetna retirement accounts. Sayyed has expressed concern about the tax consequences of a turnover

order, Doc. 177, but the United States assured the court at the motion hearing that it could structure the turnover in a way that would minimize those consequences. (The Government observes, for example, that the ten percent tax penalty ordinarily imposed on early withdrawals from certain retirement accounts does not apply where, as here, an involuntary withdrawal is made to pay a criminal restitution judgment. *See* IRS Private Letter Ruling 200426027, at 12-13 (Mar. 30, 2004).) If Sayyed is dissatisfied with the Government's proposed structuring of the liquidation and turnover, he may bring the issue to the court.

May 9, 2016

United States District Judge